We'll call the next case, agenda number 6, case number 112-026, Matthew D. Wilson versus the County of Cook. Counsel for the appellant. Good morning, Mr. Chief Justice, and may it please the Court. I'm Stephen Holbrook, representing the appellants. I'll be handling the issue of whether the ordinance violates the Second Amendment to the United States Constitution, and my colleague will argue regarding due process vagueness and equal protection. Before you start, in one of the briefs, it is argued that the county ordinance is preempted by a specific state legislation in the State's Wildlife Act. If we were to find preemption, would that end the case? You need not address Federal Second Amendment constitutional questions? That would probably be an accurate assessment because there's a rule of constitutional law that if you can decide a case based on the statutory ground and avoid the constitutional issue, then that would be judicially indicated. The argument has to do with the game code provision that allows or authorizes the use of what are called large capacity rifles to hunt certain kind of game as, for example, coyote. And so if the Court were to go there, we don't have that. It's not a count in our complaint. However, it is part of the law, and it was raised effectively, I think, in the amicus brief of the Police Conservation Lodge. Is it your position that there was preemption or it's not preempted? Arguing that there is preemption here because the Cook County bans firearms based on, in part, on capacity. Any magazine holding more than ten rounds is banned as well as rifles that use those magazines. So that is authorized as part of the DNR regulations. If you look at the Game Law Digest, the authorization to use those types of rifles are there. And so there is statewide preemption as to the game law, and the Cook County ordinance is inconsistent with it. Let me ask you another preliminary question. I know you're very familiar with the Heller 2 Court of Appeals case. Can you tell us the current status of that case? Has a writ been filed? What is the status of it? Yes, Your Honor, that's actually my case. And the Court upheld the so-called assault weapon ban in that case, and the Court remanded, however, for further proceedings regarding the validity of the registration system. The Court indicated there was not sufficient evidence in the record that that was a valid restriction. D.C. has very onerous registration requirements for firearms. So the case was remanded at that point, and that's where it is now. It's on remand. And we did not file a petition to rehear and bonk, but we do have the option of going back. Frankly, whoever loses on the registration issue will go back to the Court of Appeals. And at that point, it will be our option, if we wish to do so, to file a cert petition to the U.S. Supreme Court on that part of the case. Now, I'm glad you brought it up at this point, actually, because that was a summary judgment case. Both sides had an opportunity to set forth what they believed was relevant evidence in the record. And although we feel that the Court decided that issue wrongly, because even the majority held that the kinds of firearms that were banned are in common use, there's a dissent that obviously differs from that. But that was a summary judgment case. And here we're before the Court on a motion to dismiss the complaint for failure to state a claim with the rule that all well-pleaded facts have to be construed as true, and also very strict rules about what judicial notice can be taken of. And I think this decision of the court below stretches the outer bounds of those procedural rules. We say in the complaint that the kinds of firearms that are banned are in common use, and the plaintiffs wish to use them for purposes of sport. Counsel, could I really stop you right there? I was going to ask you a question about your complaint, because it seems to me that we all are struggling with what the appropriate analysis is here. The courts across the country are struggling with that. But certainly we're here in the pleading stage, so we should be looking at the pleadings. And so my question to you specifically is, can you show me where in your complaint you either allege that these weapons are not unusual and that they are not dangerous, or, as you put it, that they are common? Where do you pledge that? What I'll say generally is that each plaintiff indicated why he possessed the firearms that he does possess, and they do refer to sporting use, hunting, collecting, self-defense. Do we use the words? Actually, the First Amendment complaint was filed well before either the Heller or the McDonnell opinion, so you don't have the magic words there, but it's the county's burden to show dangerous and unusual. That is my specific question, because we are a fact-pleading state. And my review of the complaint, other than restating the three plaintiffs, their ownership of certain weapons, et cetera, I don't see the kind of fact-based facts as we see, for example, in the other cases. There's some statements about some plaintiff's experts, but not on this issue of either dangerousness or being unusual. So I guess the question is, what must a plaintiff plead? Not so much what does the defendant have to show in a motion to dismiss, but what does a plaintiff have to plead in this new world of Heller and McDonnell? Well, the plaintiff simply has to plead that these are firearms that I have an interest in, that I possess, that I use for lawful purposes, and that I am law-abiding. That's in the complaint as well. And once that's pled, it's up to the county to indicate somehow that these firearms cross the line that was drawn in Heller. In Heller, the court held that handguns and long guns are constitutionally protected, and that M16 machine guns and other dangerous and unusual weapons are not constitutionally protected. That's why we think even at this stage of the proceeding, it would be appropriate for this court to look at the ordinance and compare it with the decisions in Heller and McDonnell and declare it unconstitutional. On that issue, counsel, is it a fair statement that federal courts have upheld ordinances, laws similar to the ordinance in this case? Only in the Heller 2 case. The Fincher case that is cited by the appellees in this case involved M16 machine guns and sawed-off shotguns. I don't know of any other federal cases that have upheld something like this. We're in a new dawn, I think, of this. But I think it is clear, just the very narrowest holding in Heller and McDonnell, they said handguns are protected, and most handguns today are semiautomatic. They're no different functionally than the firearms that are banned here. In fact, many of them are banned under this ordinance. Is it the plaintiff's position, I take it, is that this is a facial challenge to the ordinance and that there are no set of facts under which this could constitutionally operate? I think we could depict it either as unconstitutional on its face or as applied. But we're the plaintiffs who have standing. We're not persons who are other than law-abiding. And we assert in the complaint that these are the firearms that we possess. They're banned by the county ordinance. And so, yes, my answer is that it would be susceptible to a facial challenge. But I think even if the court disagreed with that, if you look at the cases where, like Chester is a good one, where the appellate court put a lot of emphasis, that was intermediate scrutiny and it had to do with persons who were not law-abiding persons. And those cases under intermediate scrutiny do allow for, as applied, challenges. And so I think we would say both of the above as far as the answer to that question. And, frankly, the county makes a lot of arguments about, you know, these guns are for killing a lot of people quickly and all these. This is all political rhetoric. You can go to any shooting range in this very state or anywhere in the country and you'll see these kinds of firearms. Law-abiding people don't keep them for that purpose. Guns in the hands of criminals are a danger to society. At the very time when this case was being briefed in the appellate court, when McDonald was pending in the U.S. Supreme Court, the city of Chicago filed a brief saying almost all gun crimes in Chicago are with handguns. And yet we have deference by the appellate court in this case to this political rhetoric that the guns they banned are 20 times more likely to be used in crimes than any other kind of gun. And we have an allegation that they're military guns. And no military force in the world uses these guns. They're civilian guns. That's another Supreme Court case I think that's relevant here is Staples, which clearly shows that there's some cosmetic features here that are similar with, for example, the AR-15 rifle. That's a model designation of a semi-auto. I'm going to interrupt you because we're back to what are we doing here. This is a pleading case. Yes, Your Honor. And you have been critical of the appellate court as well as your opponent that they have gone beyond the complaint, that they have taken judicial notice of the facts beyond the complaint. Yes, Your Honor. So I do think it would be wise to look at what we have in front of us. Have you pledged enough to move forward to summary judgment? I think that's all we're talking about at this point, are we not? Yes, Your Honor. We think that we have. And if the complaint is not completely as artful as it could be based on subsequent decisions, then I think we're entitled to amend the complaint. But at this point, it's the burden of the county to show that these are not usual or dangerous firearms and that they are susceptible to the kind of reasoning that is set forth in Heller and McDonald for actually banning them. I apologize, but your time. I don't really apologize. Your time is up. Thank you. Thank you. Thank you, Your Honors. May it please the Court. My name is Edward Ronkowski. Our Chief Counsel, Vic Quillesey, can't be here. He has a medical condition. He asked me to explain that. Before I go on to covering equal protection and vagueness, let me specifically answer Justice's question concerning the pleadings. Count 1, paragraph 32, talks about almost any long-armed rifle has a forearm component that at least partially encircles the barrel. Count 1, paragraph 39, talks about features that are commonly employed in competition matches. Count 1, paragraph 41, pistols that have accessories and flashlights and lasers are out there. Count 1, paragraph 44, almost all semi-automatic shotguns have a forearm. 46, paragraph 53, and especially count 5, paragraph 20, states specifically our allegations in the First Amendment complaint that the ordinance, quote, bans ordinary rifles and shotguns, that they're the type of firearms that have been in use for almost 150 years. I think that gives us standing under the Second Amendment. Justice asked about preemption. Beginning of this case, our side made a tactical decision not to go into preemption because preemption could be cured by a phone call by the governor down to the Department of Natural Resources office. We'd be still stuck with the violations of the Second Amendment, equal protection, and vagueness. Now, long before the Second Amendment cases of McDonald and Heller, courts across the United States have struck down firearms bans based on equal protection and vagueness. In this case, in the trial court, in the appellate court, and in the briefs in this court, the Cook County defendant has argued that the county ordinance is a far reaching in its attempt to capture and ban as many weapons as possible. They were successful. They have captured a whole lot of weapons. And in their glee to capture as many weapons as possible, they listed a whole bunch, 65 names of firearms that are banned as part of the ordinance. Under the equal protection clause, any time you have a list like that, if that list is not ban identical, nearly identical, or firearms that are indistinguishable in terms of essential operation, it violates the equal protection clause. In our pleadings, we specifically categorize five sets of firearms, giving model numbers, saying these five sets, you have a firearm here that's unbanned under the ordinance,  We have specific pleadings. Those pleadings can only be met by evidence and only disproved by evidence. The trial court denied us the opportunity to do that. Our pleadings also show numerous examples of vagueness, where the ordinance fails to provide the noticed ordinary people of what is banned. Start with that list of 65 firearms. There's one manufacturer in there, the Sega, that makes both shotguns and rifles. They're all banned, one brand. And then 63 models and all the copies of duplicates of that. Now, these models change. And you could go no further than the common law record in this case, listing the 93 ordinance to 2006 to see how fast those models change. In 1993, when the first ordinance was passed, there were 60 banned firearms. Thirteen years later in 2006, they kept 10, they struck 50, and they added 55. These models change from time to time. If you, as an ordinary citizen, get a copy of the latest ordinance and go down and try to buy a firearm that's not banned under this Cook County ordinance, how would you know, how would the salesman know, how would anyone know, that rifle that you're looking at is not a copy of one of those models that are listed on there? And perhaps it's a copy of a Sega shotgun. How would you know that? Worse yet, you go down there, I want to buy a semi-automatic rifle that has a detachable clip. The clip that comes with it only carries four shots. You look at the ordinance, well, perhaps it's sufficient. You check with the salesman. Do they make a large capacity magazine that will fit this? He checks, no. You buy that rifle, you take it home to Cook County. The very next day, if somebody in China makes a large capacity magazine that fits it, you're now a criminal. You're being criminalized for conduct that occurred halfway around the world that you had no responsibility for and didn't know anything about, because the ordinance bans not what you have, only if that rifle, the semi-automatic rifle, has the capacity to accept a magazine. You don't have to have that magazine under that provision. You could get around some of these equal protection violations by just cutting off the list of firearms from the ordinance. You could cure some of the vagueness problems by striking those vague provisions, like the copies and duplicates, the capacity to accept, and instead ban it by essential operation. The problem you can't cure is a Second Amendment violation, because when you add up all the different categories of firearms that are banned, the shotguns that are banned because the smaller shells will increase the capacity beyond five, the semi-automatic rifles that are banned because it could be held by two hands. There's a provision that says if you have a shroud over the barrel to keep your hand from being burned, that makes that an illegal assault weapon. All semi-automatic rifles have a forearm that will allow you to do it. That's a very comprehensive ban. The ordinance also bans high-capacity clips. The most common firearm, a handgun, that is sold is a Glock, and they have clip magazines that have more than 10 rounds in it, making it illegal. When you start categorizing up all those things, you find out that the Cook County Ordinance bans more firearms than the firearm bans that were struck down under Heller and McDonald. Mr. Ronkowski, does that include a .40 caliber Glock? It's my understanding that the Glocks come, and the .40 caliber Glocks have capacity, magazine capacities that have more than 10 rounds. More than 10 rounds. They go up to, I think, 15 or 17. Okay. And is that the type of weapon, gun, whatever the right phrase is to use here, that Heller found to be within the scope of protected Second Amendment? Oh, yes. Fundamental right? Yes. Even the Emerson case held that the 11-shot semi-automatic pistol was protected under the Second Amendment. The last thing this Court should do is go down the path suggested by a defendant that you could ban firearms based upon capacity. Because if you could do that, why not make it capacity of nine, five, four? Why not pass an ordinance under that rule that you could only have a firearm that only fires one bullet before you have to reload? Same thing with features. They have an ordinance that defines firearms that are evil and banned based on features. You could have it like this ordinance that bans semi-automatic rifles if you could hold it with two hands and it has a detachable clip. If somewhere in the world they make a large capacity magazine for that. Based on that, we're asking this Court to declare the constitutional, the statute ordinance unconstitutional on its face or on the alternative, remand it for a hearing to allow us to prove up these facts. Let me ask you the question. What is the remedy you're asking for? You're asking us to declare the constitutionality? Yes. Under the Heller decision, when you have an exhaustive ban of, yes. Does that dismiss the complaint? I mean, how far down the line are we to go in the procedural position that we're in? This is not a motion for summary judgment? Correct. A motion for judgment on the pleadings? Yes, that's where we're at. Okay. And you have enough, if you go by the way, the Heller court decided these things and the McDonald court that you could look at the application of the statute and see it's unconstitutional under the categorical test. Any other questions? Thank you. Thank you. Counsel for the appellee. Your Honors, good morning. May it please the Court, I'm Paul Castiglione and I'm here to represent Cook County defendants in this matter. I want to address a question Justice Freeman raised about whether the county ordinance is preempted by home rule. It is not. It's important to say the county ordinance does not regulate the taking of wildlife and it doesn't prohibit hunters from using particular weapons in terms of hunting wildlife. So in my view, the home rule argument is a red herring and this ordinance is not preempted by home rule. I would say. Counsel, where is that language in the ordinance? I'm sorry, Your Honor. I'm sorry. Where is the language in the ordinance that buttons up that hole that you say resolves the preemption issue? Well, the ordinance doesn't talk about taking wildlife at all. It has the subject of the state wildlife code. So it doesn't regulate the same subject as the state statute and therefore is not preempted by that statute. It's really apples and oranges. The county ordinance does not deal with hunting at all. It deals with possession of certain semi-automatic weapons within the county of Cook. What about someone who possesses the kind of weapon that they would be out hunting with some area within Cook County? Well, the county ordinance does not prevent them from using some other type of weapon for hunting. What about the ones that are prohibited under the ordinance? Well, it would prohibit possession of those weapons, it's true, but the state wildlife code does not set forth, doesn't set forth what weapons can be used in hunting and neither does the county ordinance. So in that sense, I think they're really regulating two different things. And that's the home rule argument. I mean, it's not preempted by home rule. And I'd add one other thing about home rule. The purpose of home rule is that, or at least the theory behind it, is that local governments that are closest to a problem are best able to figure out what remedies are best suited to deal with a particular problem. And that's the case here. You have Cook County, which has the third largest city in the nation, Chicago, within it, many parks, many open spaces, many areas where a semi-automatic weapon could cause much mayhem. This is the remedy that Cook County adopted, basically balancing the rights of recognizing the power of a person to be able to protect their hearth and home with a handgun, but at the same time protecting the public at large from these other weapons, which are dangerous, unusual, and pose great threats to the public. To respond to Justice Tice's colloquy with Mr. Ronkowski, for procedural reasons, Your Honor, and on the merits, the circuit court properly granted the county's Section 2615 motion to dismiss. It is my position that the plaintiffs did not properly plead a cause of action for a violation of the second amendment that's construed in Heller. To do so, they would have had to say that the county ordinance bans the semi-automatic weapons subject to the county ordinance are similarly situated to the traditional handgun banned in Heller in terms of two things, capacity and rapidity of fire. And you look at the plaintiff's complaint, the account for their amended complaint, it simply does not do that. In light of that, the circuit court properly dismissed the complaint. As a result, plaintiffs' argument that they should have been able to present a factual record is really a red herring here. As they did not submit a complaint that withstood a 2615 motion to dismiss, they did not have a right to present facts based on this record and based on their complaint. I would also add to that, typically if there's going to be facts brought up about the legislative history, it's really only proper to do that if there's some ambiguity in the text of the ordinance. And that's not the case here. I don't think anyone disputes what the county intended to do here, which was to ban these very dangerous weapons. Counsel, how can an individual from reading the statute tell whether his or her gun is banned if it's not one of the ones specifically delineated? Well, the ordinance is very clear in that respect. It defines an assault weapon to be one that has a large capacity magazine, which is more than 10 bullets, and one or more features of the following. And there's five features, all of which really are concomitant with weapons that can fire on a rapid fire basis, such as a pistol grip without a stock attached or a protruding grip, et cetera. And the ordinance also has the phrase copies or duplicates thereof. So any weapon that falls into that category, one of the listed weapons or one that's a copy or duplicate thereof, would be banned. And this court has recognized back as far as almost a century ago, more than a century ago, that a copy or duplicate is a reasonable facsimile thereof. So I think that gives a person reasonable intelligence notice as to what weapons would be banned. Counsel, I'd like you to chime in on what is in front of this court today. I mean, Justice Tice asked a number of questions about, you know, we're at the pleading stage. As I look through the appellate court opinion, full-blown discussions of Heller, McDonald, the law with respect to due process, equal protection, vagueness. Aren't the constitutional issues squarely before us today? I think they are, Your Honor. I think they are, because really the question here is where can a line be drawn in terms of banning certain weapons? And has the county drawn it in a place that's proper or in a place that violates the Second Amendment? Now, we know from Heller that they cannot ban handguns that would be used for protection in the home. That's as far as Heller, the Supreme Court case in Heller, went. But we know from the subsequent Heller case in the District of Columbia Circuit Court that an ordinance almost identical to the county ordinance here did not violate the Second Amendment. So in listening to just the brief portion of your answer, you have no quarrel with opposing counsel that this court is to rule on the constitutionality of this ordinance. Well, we feel it's constitutional. I understand that. We do. And what we feel is constitutional based on its face, if there was a record developed, we would still think it was constitutional. So you have no problem with us getting there? I do not. Okay. My concern has been certainly your opponent is asking for hearings to challenge the findings of the county board. Right. The county board made findings in whatever it is, 94, and they're saying that those were shoddy findings, and so therefore there should be some kind of hearing so there could be some kind of debate about whether or not these are dangerous and unusual, really. Right. So how do we do that on 2615? See, I don't think a state court can do it at all. And I think that's one of the problems with plaintiff's argument. State courts do not sit in administrative review on the findings or determinations of a legislative body. There's a very, very narrow way that issue could come up, if there was some sort of issue over the ambiguity of the language of the statute or ordinance, that it might be possible. But I don't think a court is a way to be able to voice opposing views on a policy matter. The fact that they think the county board was wrong and that their findings were one-sided or perhaps didn't take into account the views of gun owners, I think the solution to that, the remedy to that is a political remedy, is to be able to try to persuade commissioners or try to go that route. It's not to go in a courtroom and challenge findings. I think the question is, is the ordinance here, does it violate the Constitution or does it not? And it doesn't really matter what findings they made. So I guess my answer is I don't think they have a right to come in and use a court as a way to try to provide a contra record as to what a better law might have been. But Mr. Castiglione, with regard to the evidence, even in Heller 3, the court had reports and testimony and studies. And given the procedural posture of this case, shouldn't the plaintiffs be allowed to at least present some evidence? Except at this point, Justice Burke, they really haven't pled a proper complaint. And I think based on Heller 3, Heller 3 actually went by the notion of whether these weapons were even titled second amendment protection. They just said, well, whether they are or not, we're going to go right to the question of if we applied intermediate scrutiny, does this ordinance pass constitutional muster? And they held that it did. But Heller 3, like many other courts, has taken a two-part test to any sort of firearm regulation. One, does the firearm, does the regulation, or does the challenged conduct come within the protection of second amendment, number one? And number two, if it does. Whether the firearm is commonly possessed? That would go to the first question. And they just, in Heller 3, they decided to not address that question. I would address that question. I think there's been discussion in some of the amicus briefs and some of the plaintiffs' argument that these are commonly possessed weapons. I think, though, commonality or popularity can't determine what the constitutional earmarks or road marks, I should say, are for what can be regulated. Didn't Heller 3 say that there were other lawful uses for the weapons, not just because they're popular, there were other lawful uses? There were other lawful uses. But I think Heller 3 also recognized that if you took those semi-automatic weapons out of play, people still could have firearms to protect their homes, which was, after all, beholding of the original Heller case to begin with. And, excuse me, here, I'm sorry, I lost my train of thought. I'm sorry, Justice Breyer. Anyway, so it's my view that the case does, the 216 motion was properly held. The claim also fails on the merits. These assault weapons are not within the scope of a Second Amendment. It's construed in Heller. Heller recognizes the right of self-defense does not prohibit a government from regulating firearms outside the home. The Second Amendment protections are only extended to weapons typically possessed for self-defense. I think the key point here is there is not a fundamental right to the weapon of one's choice. Even though these weapons may be popular, it doesn't mean the government can't, in a larger interest, balance the rights of the public at large and gun owners and say, well, society may benefit if we do a balancing here. Yes, you can have weapons that are not automatic weapons for protection of the home, but perhaps possession of semi-automatic weapons poses a threat to society at large. And I remember when I was answering Justice Burke's question, just because certain weapons can be mass-produced, lots of things can be mass-produced, hand grenades, stinger missiles, that doesn't mean there's a Second Amendment right to them. I don't think we can let technology set where the Constitution, the lines that the Constitution draws over what, excuse me a second, over what is permissible in terms of gun regulation in the United States. And if one looks at the Blair Holt assault weapons ban, it's clear that it does do this balancing. It defines large capacity as any ammunition feeding device to capacity except more than 10 rounds. Assault weapons includes listed rifles, pistols, or shotguns, or copies or duplicates thereof. And the county ordinance prohibits the manufacture, sale, or possession of any assault weapon or large capacity magazine. Again, neither Heller nor McDonald recognize the constitutional right to such weaponry. And I think importantly, neither Heller nor McDonald stripped states or local governments of the right to address the public health and security problems resulting from these weapons. Now, a majority of courts addressing the question of how the Second Amendment does not ban states or local governments from regulating or outlawing semi-automatic assault weapons. Certainly one comes to mind. We cited People v. James in California as a Fincher case that Mr. Holbrook recognized and, of course, the court below in Wilson. If we believe that these weapons do not come within the scope of the Second Amendment, if this court reaches the second part of a test using Heller 3 and decides, well, assuming they do, what's the appropriate test? We've argued in our briefs that we think the appropriate test is intermediate scrutiny. And the reason is it's the most appropriate standard of review because it provides government with the flexibility necessary to balance the rights of gun owners and enthusiasts with the rights of the public to be protected from dangerous and unusual weapons. Under intermediate scrutiny, all of the government has to show that their objective is an important governmental interest, which is the case here is the protection of the public. And that objection is advanced by means substantially related to that objective, which is what the ordinance does. Let me ask you this. Sure. Again, what Heller did was say, well, we're not going to worry about the first step. Let's assume that these arms come within the Second Amendment. And it moves on then to the intermediate scrutiny test and looks at the policy decisions made by the District of Columbia's counsel. Again, my question is, how do we do that based on our record? How do we look at how the Cook County Board determined the policy reasons it chose to adopt this rule? Well, there are legislative findings, but that raises the question, how can they be challenged? And plaintiffs have certainly raised that. I mean, you can look at the language of the ordinance itself. You can see what it was they were trying to achieve. And I think in doing that, I think what's helpful about intermediate scrutiny, I think it gives the courts some flexibility and it gives government some flexibility to try to balance out the competing rights. Whereas I think strict scrutiny is more problematic. I mean, I think you'd have to show a narrowly tailored solution to an important government objective. And I think intermediate scrutiny is helpful because, again, the solutions are not always easy. I mean, it's a question of, like I say, balancing self-protection of the person in the home and basically protection of the public at large. I think intermediate scrutiny gives both the court and the government a way to be able to draw that difficult balance. And I think you can look also, Your Honor, to cases from other jurisdictions, which I think address some of the same questions. I think it's not an accident that the overwhelming majority of courts have chosen intermediate scrutiny. I think one district court in Utah has opted for strict scrutiny and that's it. I think the reason for that is I think these questions, these ordinances tend to come in large metropolitan areas that have serious problems, large populations to protect. And I think the problems are grave enough and the solutions are difficult enough that I think intermediate scrutiny helps both the government, again, come up with a solution and the courts evaluate it. Counsels also argued that the county assault weapon ban violates due process and equal protection. As to equal protection, I will say that only persons have equal protection rights, not guns. There's been no allegation of any class of individuals being discriminated against. And as for due process, I think the court below had it right. As long, because there is no fundamental right to own a particular weapon, in order to satisfy due process, the law has to meet some measure of rationality, and I think this one does. I don't think it's vague. I mean, this Court has never ruled that an ordinance can be overbrought on its face outside the First Amendment context. I don't think there's any basis for doing so here. I think it's the prohibition on the weapons listed, hekoponies or duplets thereof. It can be understood by a person of normal intelligence, and I don't think it's a due process problem. Should we be concerned about the point Mr. Bronkowski made that a gun that might be considered legal under the ordinance today could be made illegal by advanced technology or manufacturing of a larger capacity magazine? Well, I think the problem with that argument is it's basically saying you can have no law, because there might be a gun manufactured at some point in the future that we can't anticipate now if it's going to make this gun illegal. And I think under that rationale, it would be tough to regulate anything. So, no, I disagree with that. I think the law is pretty clear. I mean, in terms of capacity, it's got to be able to accept a large capacity magazine, and it's got to have one of the five characteristics set forth in the ordinance. And I think that's clear, and I think that satisfies due process. So even if it occurs after the fact of the purchase and the possession for some years, it later becomes illegal? Well, at that point, then I think that's something that would have to be addressed. I mean, laws change over time. I think his point is that a gun could be conceived somewhere in the future that we don't have right now that might make the gun I have now violate the ordinance. I don't know if that's true. I mean, I think a gun could be manufactured down the line that we can't conceive, that might not be identical to the guns we have now that may ultimately violate the ordinance. But I don't see that as a concern, no. Well, I understood his point was the gun could be in all respects legal under the current ordinance because of the capacity and everything else, but a manufacturer makes a magazine that fits the same gun that has a larger capacity. Therefore, the gun becomes illegal. I think that was the argument. Should that give us any pause? I don't think so because, I mean, I think at that point, then that gun, too, would be illegal under the ordinance. And I think they would both be illegal. So, no, I don't think it would be a problem. It would be a problem. I don't think so. Well, that's true. That's true. If this court has no further questions, we'd ask that the circuit court and appellate court be affirmed. Thank you. Thank you, counsel. Rebuttal. If it may please the court, vagueness permeates this ordinance, and that very example you were just discussing exemplifies that. The law, the ordinance says that if it may accept a large capacity magazine and you may buy the gun with a five-round magazine, you don't know what might be on the market or what might come on the market at some later date. And so you're stuck with it. What you thought was legal at one point became illegal later. And you could pick that or the shroud definition or virtually any other term used in the generic definitions that make something what they pejoratively call an assault weapon. So, I mean, the vagueness is clear, not to mention also you have to know the design history to know whether it's a copy or duplicate of something else, which maybe only the designer or maybe an engineer would know something like that, but an ordinary person would not. But I'd like to return to the argument about common use. It was Heller and McDonald that set forth the test of whether a firearm type is in common use by law-abiding people for lawful purposes. We do allege that in the complaint. And so, first off, I think if the court is persuaded that the holdings in Heller and McDonald would apply here, namely that handguns and long guns are protected constitutionally, and that's where they drew the line. Machine guns, destructive devices, and other things like that are not constitutionally protected. We know the category that these firearms fit in at this point. And so it would be appropriate if this court saw fit to do so, to rule the law unconstitutional at this stage of the litigation. But if the court does not think that there's sufficient evidence or it's not known sufficiently whether these are commonly possessed by law-abiding people for lawful purposes, then the appropriate thing to do would be to remand the case. We think we can show that there's been millions of these firearms that are produced, many of them right here in the state of Illinois, that they are possessed throughout the whole country by law-abiding people for lawful purposes, namely for hunting and for sport, for competitions, and for self-defense. And it just won't do when we have a constitutional right for a legislative body to make an assertion in the finding. A finding is not just a priori on its face valid. If a finding said the earth is flat, that would be disregarded. Could you help me with this? Because it seems to me, and as my questions, I think, have indicated, in both the first, assuming that the legal framework we're to use is to decide whether or not these arms fall within the Second Amendment, and then secondly, if they do, what level of scrutiny we're going to look at. In both of those steps, it seems to me that there are facts that have to be determined. So you have the council or the Cook County Board making certain kind of determinations. Yes. I'm not familiar with other cases where we go behind the legislative intent. The legislator said, we make these findings, whatever it is, one out of three. I forget what the statistic is that you challenged, but they say something like one out of three police officers were killed or killed by these kind of weapons or whatever it is that they said in their findings. You want to challenge the findings of the board. I'm not familiar with other cases where we do that. We look at what was it that the board was thinking about at the time, what was their intention. How do you get to a factual determination going beyond the findings that they made? That raises the possible three levels of scrutiny. If we take the Heller or McDonald approach, it's a categorical approach which doesn't even do that. They just said that case got to the Supreme Court and they said handguns are constitutionally protected. This case is over. But if we were to apply strict or intermediate scrutiny or even rational basis, there's got to be factual determination, judicial adjudication of facts presented by both sides, even in rational basis. The Carol Leone products case that we cite that the Heller decision reaffirmed, that was a rational basis case from the 1930s. And the court said even under that test you have an opportunity to challenge findings made by the legislative body. So if the legislative body made a finding and it's so blatantly incorrect, even under a rational basis test you're allowed to challenge that. And if we go up a notch to the intermediate scrutiny cases that are cited that the defendants here want to rely on, Chester, Williams, these are cases that mostly apply to persons convicted of criminal offenses. And even in those cases they say there's got to be not only the important government objective, and we all agree that it's an important government objective to reduce violence, but whether there's a substantial relation between that objective and the means that are chosen is another question altogether. And that's where the factual issues can come into play if intermediate scrutiny is the standard that we're relying on. So we think that it would not be appropriate for this court to decide the case on the merits if the court were to say that the law should be upheld constitutionally, because that would be based on presuppositions that the county makes in its brief. They cite to the Chicago Tribune and they cite to pamphlets and polemics by different lobby groups. And they say these are the facts. And those are not things that obviously you can take judicial notice of. You can take judicial notice of statistics that the Census Bureau gives us and certain other things, but certainly not technical things about firearms or the use of firearms in society any more than a lot of other criminological or sociological things that people may assert in various academic publications or elsewhere. So we believe that the court should either, if the court is inclined to take the categorical approach that Heller and McDonald took, and if you see that, if you agree that handguns and long guns are protected as set forth in those decisions, this ordinance is facially unconstitutional. But if we have to deal with assertions like they're unusual and dangerous, I guess every firearm can be dangerous in their own hands, but if it's unusual, it would cut against the commonality. And then we get into the standards set forth in Heller and McDonald about commonly possessed by law-abiding people for lawful purposes. And if the county wants to try to say that only criminals possess these guns, I think they're going to have a rude awakening if we get a chance to litigate this as a factual matter, because they're just possessed by people all over this state and throughout the United States for the various purposes that we've discussed. One more point about the preemption issue. My colleague said that the law would not be inconsistent with the game code in any way because it doesn't regulate hunting, but what it does do is to ban certain firearms that the game code says that you can use. By the same token, if they were to say in Cook County we're going to ban use of any firearm for hunting and only allow archery hunting, for example, that I think would be clear to everyone would be preempted by the state game code. And here we have them banning certain kinds of firearms, rifles specifically, that the game code says you can use. So I'm just not clear how it would not be preempted. It seems like it would be in that sense. If the court has no further questions, we'll rely on our arguments thus far. Yes, Sean. Well, if we were to go down that path in the preemption, the game code wouldn't address all the problems that you're complaining about in the ordinance on the other types of guns, would it? It would address that issue about a firearm that has the capacity to accept a magazine that would hold more than ten rounds. But I think probably there would be other things left in the case because the guns that are listed that are banned by name, it's not clear whether they meet that generic definition or not to start with. You mean the ten rounds? Yes, the capacity to accept. For example, they ban guns that who knows what they even are, SLR4, something like that. So I guess if it has that model name engraved on it, it's banned. But I don't think the general public even knows what that is. But if you have one and if we don't know whether it would be a large capacity firearm based just on that model name on it. So probably there would be things left to the case if the court were to find preemption. One other question. I think I know the answer, but I don't want to assume I know it. You mentioned during your principal argument that when the case was pled, you didn't have McDonald, you didn't have Heller. I know there's amended complaints. Are you seeking any alternative right to amend further based on any other developments in the Heller cases? I'm not suggesting it. I'm just curious. Only if this court or another court below this court said that it did not suffice. But facts could be pled more properly if we have that decision. That's typical, isn't it, that a court dismisses a complaint giving leave to amend based on whatever the court says is wrong with the complaint. And so certainly we would seek to do that if we were told that the complaint did not suffice. I'm trying to understand. Are you departing from your colleague's tactical decision to not employ the game code? I mean his position that the statute can be changed tomorrow? Are you using it more as an example or are you asking us to consider the preemption argument? I think the court should consider it. I was not in the case. Did you talk before you came in here? Well, Your Honor, we think ultimately it's got to be resolved. And as we just, the dialogue with the Chief Justice I think made clear that it would not resolve all issues in the case anyway. Because that would only resolve the large capacity issue. But there's still 65 guns banned by model name without regard. We don't know whether they're having the capacity to accept this or that or something else. So I think there would be plenty of the case left even if the court were to find preemption. The red light's on if there's nothing further. Thank you, Your Honor. Thank you. Mr. Hallbrook, Mr. Ronkowski, Mr. Castiglione, thank you for your arguments today. Case number 12026, Matthew D. Wilson v. County of Cook is taken under advisement as agenda number six. Thank you.